IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Barbara Wienhoff, individually and on behalf of all others similarly situated, | 3:21-cv-00501 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Conagra Brands, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Conagra Brands, Inc. ("defendant") manufactures, labels and sells pudding under the Snack Pack brand in flavors including chocolate ("Product").

2. Milk is the main ingredient in pudding.

3. Milk is one of the most important foods for the development of children.

4. Pudding is a food intended for children, whose nutritional development is enhanced by consumption of full fat milk products.

5. Whole milk is a preferred choice for pudding because it makes the product thicker and taste better.[1]

6. In the context of a pudding product, consumers will interpret "real milk" to mean "whole milk."

7. Milk is defined as 3.25% milkfat (containing Vitamin A) and 8.25% nonfat milk solids. *See* 21 C.F.R. § 131.110(a); 21 C.F.R. § 131.110(e).

8. Milkfat is the most valuable component of milk, with 400 types of fatty acids.

---

[1] Lowfat vs. Nonfat Milk, Cook's Illustrated.

9.  "[Whole milk is] particularly rich in branched-chain amino acids (BCAAs) – such as leucine, isoleucine, and valine."[2]

10. In the early 20th century, companies realized they could make more money by removing milkfat from milk and replacing the fat portion with coconut oil.

11. This compound of skimmed milk and coconut oil looked like and was labeled similarly to evaporated milk.

12. This "filled milk" was cheaper than whole milk and heavily promoted to consumers.

13. Congress prohibited filled milk in the early 1920s because it was deleterious to public health and was difficult for consumers to distinguish from real milk.[3]

14. In the 1970s, a court in this District held that the prohibition of filled milk was a denial of due process.

15. The replacement of milkfat with vegetable oils is a practice which still exists.

16. Defendant's relevant front label representations include "Pudding," "NEW, SMOOTHER RECIPE!," and a tab which states, "Made With Real Milk" and a bottle of overflowing milk.

---

[2] Atli Arnarson, Milk 101: nutrition Facts and Health Effects.
[3] Raymond Reiser, "Nutritional inferiority of filled versus natural milk with special reference to fatty constituents." *Journal of Dairy Science* 52.7 (1969): 1127-1129.



17. The top of the Product states "MADE WITH REAL MILK" with a splash of white milk, followed by four checkmarks: 0g of Trans Fat Per Serving, NO Artificial Growth Hormones Used!, NO High Fructose Corn Syrup and NO Preservatives.



18. A symbol appears next to "Made With Real Milk," which a magnifying glass reveals as an asterisk.

3

19. Beneath the checkmarks, the asterisked statement is "*Made With Nonfat Milk."



20. The "Made With Nonfat Milk" statement is so small that it could not be enlarged further because it is smaller than 50 pixels.



21. A similar asterisk appears with the "Made With Real Milk" claim on the front tab, but without any corresponding explanation.

22. The fine print of the ingredient list identifies "Nonfat Milk" as the second most predominant ingredient, after water.



INGREDIENTS: WATER, NONFAT MILK, SUGAR, MODIFIED CORN STARCH, COCOA (PROCESSED WITH ALKALI), PALM OIL, LESS THAN 2% OF: SALT, SODIUM STEAROYL LACTYLATE, NATURAL AND ARTIFICIAL FLAVOR.

23. The sixth most predominant ingredient is "Palm Oil."

4

24. The Product's promotion of "REAL MILK" is false, deceptive and misleading because it lacks any milkfat.

25. The Product's fat content – 2g per 92g serving – is entirely from palm oil, a lower cost solid fat replacement for the fat from whole milk.

26. Palm oil contains 50% saturated fat, which increases low-density lipoproteins (LDL) and cholesterol, with negative health impacts.

27. Palm oil lacks vitamins, minerals, and protein.

28. Whereas whole milk provides 2% of the daily value of Vitamin A, the pudding with palm oil has a negligible amount of this nutrient.

29. The front label even touts the Product as "Smoother," a descriptor associated with whole milk.

30. Milkfat melts just below body temperature (35°C) and exhibits gradual and complete melting in the mouth and thus is perceived to have a smooth mouthfeel ("NEW, SMOOTHER RECIPE!").

31. The representations of "Real Milk" give consumers the impression that the Product's fat content will come exclusively or predominantly from milkfat.

32. Consumers are misled because none of the Product's fat content is from milkfat.

33. It is false and misleading to consumers to highlight "real milk" when its most significant part – milkfat – is replaced with palm oil, a cheaper and nutritionally inferior ingredient.

34. Beyond the nutritional benefits of whole milk in pudding, milkfat's unique flavor is inherently desirable to the human palate.

35. The flavor of milkfat is difficult to duplicate synthetically because many of its flavor compounds exist in the bound or precursor state and are released upon heating.

36. Major contributors to milkfat's flavor include short-chain fatty acids (C4 to C1O), lactones, methyl ketones, and aldehydes.

37. Minor contributors include esters, alcohols, hydrocarbons, aromatic compounds, indole, methyl indole, phenolic compounds, and dimethyl sulfide.

38. Milkfat also imparts a desirable cooling sensation in the mouth as it melts.

39. In contrast, vegetable oils like palm oil provide a waxy, greasy mouthfeel.

40. Palm oil is unable to provide an equivalent organoleptic and sensory experience to real, whole milk.

41. Although the Filled Milk law was passed to prevent the sale of separate milk products, i.e., cans of "milk," the replacement of milkfat with vegetable oils and the promotion of this food – or ingredient – as real, or whole milk, to consumers.

42. Defendant's Product is deceptively labeled relative to competitor products which truthfully identify the type of milk used and do not create a misleading impression they are made with whole ("real") milk.

| Competitor Products | "Milk" Claim |
|---|---|
|  | "Skim Milk" |
|  | "Milk" |
|  | "Non Fat Milk" |

7

43. Illinois incorporates the federal food labeling regulations in the Illinois Food, Drug and Cosmetic Act ("IFDCA") and its parallel regulations. See 410 ILCS 620/1, et seq.

44. Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of the Product, relative to itself and other comparable products.

45. Defendant sold more of the Product and at a higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

46. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

47. Plaintiff paid more for the Product based on the representations than she would have otherwise paid.

48. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $1.79 for packs of 3.25 OZ cups, excluding tax, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

49. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

50. Plaintiff Barbara Wienhoff is a citizen of Illinois.

51. Defendant Conagra Brands, Inc. is a Delaware corporation with a principal place of business in Chicago, Cook County, Illinois.

52. Diversity exists because plaintiff Barbara Wienhoff seeks to represent a class of persons who include citizens of different states from defendant.

53. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

54. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchase of plaintiff and her experiences identified here.

## Parties

55. Plaintiff Barbara Wienhoff is a citizen of Edwardsville, Madison County, Illinois.

56. Defendant Conagra Brands, Inc. is a Delaware corporation with a principal place of business in Chicago, Illinois, Cook County

57. Defendant is one of the largest food conglomerates in the world.

58. Defendant owns dozens of the largest brands which occupy space in pantries and cabinets across the United States.

59. Defendant's Snack Pack pudding is consistently voted by parents as one of the key ingredients to their children's lunch boxes, and a regular snack.

60. Plaintiff purchased the Product on at least one occasion within the statutes of limitations for each cause of action, including in April 2021, at locations including Dollar General, 307 W State St, Hamel, IL 62046.

61. Plaintiff bought the Product because she expected a pudding product touted as "Made With Real Milk" and having a "Smoother" taste meant it would have whole milk, a source of milkfat.

62. Plaintiff did not expect the fat content to be entirely from non-milk sources.

63. The Product was worth less than what Plaintiff and consumers paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

64. Plaintiff paid more for the Product than she would have paid otherwise.

65. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations about its components and ingredients are consistent with its representations.

## Class Allegations

66. The class will consist of all purchasers of the Product who reside in Illinois, Florida, Texas, Ohio, Indiana, Iowa, Minnesota, Michigan and Wisconsin, during the applicable statutes of limitations.

67. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

68. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

69. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

70. Plaintiff is an adequate representative because her interests do not conflict with other members.

71. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

72. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

73. Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

74. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

75. Plaintiff incorporates by reference all preceding paragraphs.

76. Plaintiff and class members desired to purchase a product which contained whole milk and milkfat, instead of non-nutritive vegetable fats.

77. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

78. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

79. Plaintiff relied on the representations.

80. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

81. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained whole milk and milkfat, instead of non-nutritive vegetable fats.

82. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

83. This duty is based on Defendant's outsized role in the market for this type of Product.

84. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

85. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

86. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

87. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

88. Defendant had a duty to truthfully represent the Product, which it breached.

89. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area – a trusted manufacturer of household staples.

90. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

91. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchases of the Product.

92. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

93. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

94. Defendant's fraudulent intent is evinced by its knowledge that it replaced milkfat with palm oil, evinced by the asterisk which is difficult for consumers like Plaintiff to notice.

### Unjust Enrichment

95. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   May 20, 2021

                                        Respectfully submitted,

                                        Sheehan & Associates, P.C.
                                        /s/Spencer Sheehan
                                        _____

                60 Cuttermill Rd Ste 409
                Great Neck NY 11021-3104
                Tel: (516) 268-7080
                Fax: (516) 234-7800
                spencer@spencersheehan.com