**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**BARBARA WIENHOFF,
Individually, and on Behalf of
All Others Similarly Situated,**

**Plaintiff,**

**v.**

**CONAGRA BRANDS, INC.,**

**Defendant.**

**Case No. 21-CV-00501-NJR**

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss Plaintiff Barbara Wienhoff's Class Action Complaint filed by Defendant Conagra Brands, Inc. ("Conagra"). (Doc. 13). For the reasons set forth below, Conagra's Motion to Dismiss is granted.

### BACKGROUND

Wienhoff alleges that Conagra manufactures, labels, and sells pudding. (Doc. 1, p. 1). On the front label, Conagra includes the words "Pudding," "NEW SMOOTHER RECIPE!," and "Made With Real Milk." (*Id*. at pp. 2-3). A picture of the front label of the pudding is below:



The top of the pudding package also states, "Made with Real Milk" with an asterisk and four checkmarks: 0g of Trans Fat Per Serving, NO Artificial Growth Hormones Used!, NO High Fructose Corn Syrup, and NO Preservatives. (*Id.* at p. 3). Beneath the checkmarks, another statement with an asterisk says "*Made With Nonfat Milk." (*Id.* at p. 4). An image of the pudding's top label is found below:



The pudding package also contains an ingredients list. (*Id.*). Wienhoff notes "[t]he fine print of the ingredient list identifies 'Nonfat Milk' as the second most predominant ingredient, after water." (*Id.*).

Wienhoff purchased the pudding on at least one occasion at Dollar General in Hamel, Illinois. (*Id.* at p. 9). Wienhoff "bought the [pudding] because she expected a pudding product touted as 'Made With Real Milk' and having a 'Smoother' taste meant it would have whole milk, a source of milkfat." (*Id.*). Wienhoff alleges that "[i]n the context of a pudding product, consumers will interpret 'real milk' to mean 'whole milk.'" (*Id.* at 1). Wienhoff asserts "[t]he representations of 'Real Milk' give consumers the impression that the [pudding's] fat content will come exclusively or predominantly from milkfat." (*Id.* at p. 5). According to Wienhoff, "[c]onsumers are misled because none of the [pudding's] fat content is from milkfat." (*Id.*). Wienhoff then alleges "[i]t is false and misleading to consumers to highlight 'real milk' when its most significant part— milkfat—is replaced with palm oil, a cheaper and nutritionally inferior ingredient." (*Id.*).

Wienhoff brings a class action against Conagra with the following claims: (1) Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA"); (2) Breaches of Express Warranty, Implied Warranty of Merchantability, and Magnuson Moss Warrant Act, 15 U.S.C. § 2301 ("MMWA"); (3) Negligent Misrepresentation; (4) Fraud; and (5) Unjust Enrichment. (Doc. 1). Conagra timely moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 13).

The Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d). Under CAFA, federal courts have jurisdiction over cases in which (1) the class consists of 100 or more members, *see* 28 U.S.C. § 1332(d)(5)(B); (2) any plaintiff is a citizen of a state different from that of any defendant,

28 U.S.C. § 1332(d)(2)(A); and (3) the aggregate amount of the plaintiffs' claims exceeds $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(6). Specifically, Wienhoff alleges "[d]iversity exists because plaintiff Barbara Wienhoff seeks to represent a class of persons who include citizens of different states from defendant." (Doc. 1, p. 9). Wienhoff defines the class as "all purchasers of the Product who reside in Illinois, Florida, Texas, Ohio, Indiana, Iowa, Minnesota, Michigan and Wisconsin, during the applicable statutes of limitations." (*Id*. at p. 10). It is reasonable to infer that this class includes more than 100 people based on the alleged sale price of the pudding ($1.79 for the pack of pudding), and Conagra's alleged annual sales of the pudding exceeded $5 million during the applicable statutes of limitations. (*Id*. at pp. 8-9). Wienhoff does not explain how Conagra's sales translate to damages, alleging only that she paid more for the pudding than it was worth. (*Id*. at p. 10). Nonetheless, Conagra has not challenged that there is at least $5,000,000 in controversy. Thus, for purposes of this Motion, the Court concludes Wienhoff has properly alleged subject matter jurisdiction. *See Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 732 (7th Cir. 2021) ("Normally, a plaintiff can meet [the] pleading requirement by simply alleging a plausible amount in controversy.").[1]

---

[1] On the other hand, the Court does not have federal question jurisdiction simply because Wienhoff brings a claim under the MMWA. To be clear, federal courts do not have federal question jurisdiction over breach-of-warranty actions under the Act:

    (A) if the amount in controversy of any individual claim is less than the sum or value of $25;

    (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; <u>or</u>

    (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

*Ware*, 6 F.4th at 731 (emphasis added) (citing 15 U.S.C. § 2310(d)(3)). Here, Wienhoff alleges that the pudding "is sold at a premium price, approximately no less than . . . $1.79 for packs of 3.25 OZ cups,

L<span style="font-variant:small-caps">EGAL</span> S<span style="font-variant:small-caps">TANDARD</span>

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the claims, not to determine the merits of the case or decide who will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a party only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A party need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the nonmovant. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

A<span style="font-variant:small-caps">NALYSIS</span>

## I. Standing to Pursue Injunctive Relief

There is a "split of authority on the question of whether consumer plaintiffs claiming [only that] they were deceived can pursue injunctive relief when they are aware of the deceptive practice at issue." *See In re Herbal Supplements Mktg. and Sales Practices Litig.*, 2017 WL 2215025, at *7 (N.D. Ill. 2017) (collecting cases). Here, the split favors Conagra. Wienhoff cites *Leiner v. Johnson & Johnson Consumer Companies, Inc.*, 215 F. Supp.

---

excluding tax, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions." (Doc. 1, p. 8). Her damages are certainly less than $50,000. *See Ware*, 6 F.4th at 731 (noting that the "[plaintiffs'] damages are certainly less than $50,000 . . . [because] they paid only about $5,000 for the television and accessories, and the value of a replacement television with four-year-old technology would have been quite a bit less than they initially spent"). Further, Wienhoff has not named any plaintiffs besides herself. Thus, the Court lacks federal question jurisdiction based only on Wienhoff's MMWA claim.

3d 670, 673 (N.D. Ill. 2016), for the notion that "even where a plaintiff is *unlikely* to purchase a product again, he or she can maintain standing for injunctive relief." (Doc. 18, p. 22). But the court in *Leiner* relied on cases from the Eastern District of New York, Central District of California, and Northern District of California—non-binding authority.

District courts within the Seventh Circuit have concluded that allegations of deceptive practices do not support standing for injunctive relief. For instance, in *In re Herbal*, 2017 WL 2215025, at *8, the court noted:

> Moreover, beyond the persuasive force of *Bohn* and similar cases, the Seventh Circuit appears to endorse Defendants' argument. In *Camasta v. Jos. A Bank Clothiers*, the plaintiff brought a consumer fraud action based on the defendant's allegedly fraudulent sales technique. 761 F.3d 732, 734–35 (7th Cir. 2014). He claimed that had he known the truth, he would not have purchased the defendant's products. *Id*. at 735. The court explained that the plaintiff's claim did not entitle him to injunctive relief because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id*. at 740–41 (alteration in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). *Camasta* uses the language of Article III standing (i.e., "case or controversy"), cites *O'Shea* (an Article III standing case), and "[f]ederal courts must determine that they have jurisdiction before proceeding to the merits," *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94–95 (1998)). Thus, *Camasta* dealt with Article III standing. Even if *Camasta* were dicta, as the court found in *Le v. Kohls Department Stores, Inc.*, 160 F. Supp. 3d 1096, 1111 (E.D. Wis. 2016), it is persuasive.

Additionally, in *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017), the court acknowledged:

> The Seventh Circuit seems likely to agree, based on its reasoning in a similar context that a plaintiff who was already aware of the defendant's deceptive sales practices could not obtain injunctive relief because he "is not likely to be harmed in the future." *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) (" '[P]ast exposure to illegal conduct does not in itself

show a present case or controversy regarding injunctive relief.'") (quoting *O'Shea*, 414 U.S. at 495, 94 S.Ct. 669). Although plaintiff cites a decision that has dismissed this portion of *Camasta* as *dicta*, *see Le v. Kohls Dep't Stores, Inc.*, 160 F.Supp.3d 1096, 1111 (E.D. Wis. 2016), the Court finds the Seventh Circuit's reasoning compelling, regardless of whether it is *dicta. See in re Herbal Supplements*, 2017 WL 2215025, at *8 ("Even if *Camasta* were *dicta*, as the court found in [*Le*], it is persuasive.").

In *Geske v. PNY Techs., Inc.*, 503 F.Supp.3d 687, 702 (N.D. Ill. 2020), the court continued this trend finding that:

Although the Seventh Circuit hasn't directly addressed standing for injunctive relief in this context, it has offered instructive dicta. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014). There, the Court of Appeals stated that, once a plaintiff is aware of a defendant's "sale practices, he is not likely to be harmed by the practices in the future." *Id.* at 741. Courts in this district have picked up that line of reasoning and concluded that allegations of deceptive practices, without more, do not support standing for injunctive relief.

Based on *Camasta*, Wienhoff, who is already aware of the Conagra's allegedly deceptive sales practices, lacks standing to obtain injunctive relief.

## II.    Count I – ICFA Claim[2]

To state a claim under ICFA, a plaintiff must plead (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that plaintiff rely on the deceptive or unfair practice; (3) the unfair or deceptive practice occurred in the course of conduct involving the trade or commerce; and (4) defendant's deceptive or unfair practice proximately caused plaintiff actual damage. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).

---

[2] Notably, Wienhoff did not bring a count alleging "violation of state consumer fraud acts (on behalf of the consumer fraud multi-state class)" like the plaintiff in *Johnston v. Kashi Sales, LLC.*, 21-cv-441-NJR. Without a count or claim under those states' statutes, there are no additional state consumer fraud violations to dismiss.

"Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception." *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019) (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015)). This standard requires a "practical and fact-intensive approach to consumer behavior." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 478 (7th Cir. 2020).

In *Bell*, the plaintiffs alleged that the phrase "100% Grated Parmesan Cheese" on the defendants' front labels was deceptive because the products contained other ingredients besides cheese. *Id.* at 473. The district court dismissed plaintiffs' claims on two grounds:

> First, the court found that the prominent '100%' claims on the front labels are ambiguous and that a consumer who seeks clarity can find it by reading the ingredient list on the back label. Second, the court found that common sense would tell a reasonable consumer that, despite the 100% claims, these cheese products must contain added ingredients because they are sold unrefrigerated in the main grocery aisles, alongside dried pastas and canned sauces.

*Id.* at 475.

On appeal, the Seventh Circuit acknowledged that "plaintiffs' claims survive if they have plausibly alleged that the defendants' front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." *Id.* at 476. According to the Court, the phrase "100% Grated Parmesan Cheese" was ambiguous because it could convey to a reasonable consumer any of three messages: "whatever it contains is '100% grated,' or perhaps that whatever cheese it contains is '100% Parmesan'[,] [or] [perhaps] [that] '100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated." *Id.* at 476–77. The Court then held that "an

accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Id.* at 476. Accordingly, the Court found that "[h]ow reasonable consumers actually understand defendants' '100% Grated Parmesan Cheese' labels is a question of fact that cannot be resolved on the pleadings." *Id.* at 483.

*Bell* is not only an example of a deceptive advertising claim that survives dismissal, but it also provides examples when deceptive advertising claims are based on such "unreasonable or fanciful interpretations of labels or other advertising, [that] dismissal on the pleadings may well be justified." *Id.* at 477. These examples include:

> *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) ("It is implausible that a reasonable consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to imply that Drumstick is more wholesome or nutritious than competing products."); *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("Made with Real Vegetables" label on box of crackers could not reasonably mean crackers were "composed of primarily fresh vegetables"); *Werbel*, 2010 WL 2673860, at *3 (colorful "crunch berries" on Cap'n Crunch box did not reasonably promise fresh fruit); *McKinnis*, 2007 WL 4766060, at *4 (same for Froot Loops).

*Id.* at 477–78.

Conagra argues "courts have dismissed other analogous 'made with real' labeling suits (including a number raised by Mr. Sheehan) because they defy common sense and reasonable consumers' everyday experiences." (Doc. 13, p. 12). To be clear, "'[c]ommon sense' does not render plaintiffs' reading unreasonable." *Bell*, 982 F.3d at 482. "That reasoning stray[s] from the standard for dismissal for failure to state a claim under Rule 12(b)(6)." *Id.* Conagra also throws around the phrase "reasonable consumer" numerous

times throughout its motion, but the reasonable consumer standard requires a "practical and fact-intensive approach to consumer behavior." *Id.* at 478. Conagra is reminded that "[h]ow reasonable consumers actually understand defendants' [ ] labels is a question of fact that cannot be resolved on the pleadings." *Id.* at 483. "These questions may not be answered as a matter of law simply because lawyers can construe an ambiguous claim in a way that would not be deceptive." *Id.* at 480. "Plaintiffs are entitled to present evidence on how consumers actually understand these labels." *Id.*

Recently, district courts within the circuit have dismissed deceptive advertising claims finding that the labels are unambiguous and noting that a reasonable consumer would not be misled. *See Reinitz v. Kellogg Sales Co.*, 2022 WL 1813891, at *4 (C.D. Ill. June 2, 2022) (granting dismissal and finding that "[p]laintiff fails to support that a chocolate-tasting fudge product made from oils and whey would mislead a reasonable consumer"); *Cerretti v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 1062793, at *3 (N.D. Ill. Apr. 8, 2022) (while the coating on the ice cream had less chocolate than consumers expect and the chocolate contained more chocolate substitutes than cacao ingredients, it "wasn't likely to deceive a significant portion of reasonable consumers"); *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *4 (N.D. Ill. Mar. 1, 2022) (although the package included the word "strawberry" and a picture of half of a strawberry with a Pop-Tart oozing red filling "no reasonable consumer could conclude that the filling contains a certain amount of strawberries based on the package's images and its use of the term 'Strawberry'"); *Rice v. Dreyer's Grand Ice Cream, Inc.*, 2022 WL 3908665, at *4 (N.D. Ill. Aug. 30, 2022) (noting that "a reasonable consumer would not understand the front label to convey that the ice

cream's coating consists only of chocolate and almonds"); *Wach v. Prairie Farms Dairy, Inc.*, 2022 WL 1591715 at *3 (N.D. Ill. May 19, 2022) (granting defendant's motion to dismiss and rejecting that "a reasonable consumer would expect a product labeled 'Premium Vanilla Ice Cream' to contain a non-negligible amount of extracts from vanilla beans, or to include only real vanilla flavoring—are conclusory statements that [the] [court] need not accept").

At the same time, district courts within the circuit have denied motions to dismiss in deceptive advertising cases finding that the labels' phrases are subject to different plausible interpretations. *See e.g., Kinman v. Kroger Co.*, 2022 WL 1720589, at *6 (N.D. Ill. May 27, 2022) (finding that a plaintiff's understanding that "smoked gouda" meant that the cheese was smoked over hardwood was "not an inherently fanciful or unreasonable interpretation, because the word 'smoked' has at least two meanings, one of which is the meaning plaintiff gave it . . . [and] [the] [other] [is] an adjective that describes a flavor"); *Rudy v. Fam. Dollar Stores, Inc.*, 2022 WL 345081, at *4 (N.D. Ill. Feb. 4, 2022) (noting that "the term 'smoked' may be used to describe a flavor, as Family Dollar suggests, it can also be used to describe a process"); *Harris v. Conagra Sales, LLC*, 2022 WL 2390933, at *3 (N.D. Ill. July 1, 2022) (denying defendant's motion to dismiss and noting that "'mixed berry' is misleading because it is unclear whether it's a flavor or ingredient"); *Elder v. Bimbo Bakeries USA, Inc.*, 2022 WL 816631, at *2 (S.D. Ill. Mar. 17, 2022) ("[t]he phrase 'All Butter' is subject to different plausible interpretations and is therefore ambiguous").

Unlike the deceptive advertising cases that survive dismissal—where the words in defendants' labels were subject to different plausible interpretations—Wienhoff reads

"Made With Real Milk" and "Smoother" and jumps to the conclusion that the pudding must include whole milk—and thus must include milkfat. This interpretation of Conagra's label is fanciful. To illustrate this point, in *Bell*, 982 F.3d 468, the Seventh Circuit provided *Red*, 2012 WL 5504011, as an example when deceptive advertising claims are based on such "unreasonable or fanciful interpretations of labels or other advertising, [that] dismissal on the pleadings may well be justified." *Id*. at 477. In *Red*, the plaintiff was suing under California's Unfair Competition Law ("UCL") because the defendant's label on a box of crackers said "Made with Real Vegetables." "Plaintiff's theory of the case [was] that the packaging 'suggests the product is *healthy* and contains a *significant amount* of vegetables' (SAC ¶ 98, emphasis added), because the packaging boasts that the crackers are made with real vegetables and depicts vegetables." *Id*. at *3. The court then found that "it strains credulity to imagine that a reasonable consumer will be deceived into thinking a box of crackers is healthful or contains huge amounts of vegetables simply because there are pictures of vegetables and the true phrase 'Made with Real Vegetables' on the box." *Id*. at *4. As a result, the court found it "suitable for dismissal as no factfinder could find that the challenged packaging is likely to deceive a reasonable consumer." *Id*.

Similar to the plaintiff's theory in *Red*, Wienhoff is alleging that Conagra's packaging suggests that the pudding is more nutritious and contains a significant amount of milkfat because it says, "Made with Real Milk" and depicts a bottle of overflowing milk. (Doc. 1, pp. 1-9). But similar to how it was unreasonable for the plaintiff in *Red* to be deceived into thinking a box of crackers contains huge amounts of vegetables—it is

fanciful that reasonable consumers will be deceived into thinking that pudding contains a significant amount of milkfat.

Because Wienhoff's interpretation of Conagra's label is fanciful, Wienhoff's ICFA claim must be dismissed.

### III.    Count II – Breach of Warranty Claims

Wienhoff alleges that the pudding "was manufactured, labeled and sold by [Conagra] and expressly and impliedly warranted to plaintiff and class members that it contained whole milk and milkfat, instead of non-nutritive vegetable fats." (Doc. 1, p. 11). The problem is she relies on a fanciful interpretation of Conagra's pudding label as discussed above. Even if the Court found that Wienhoff had a reasonable interpretation of Conagra's label, her warranty claims also fail for the reasons discussed below.

### A.  Privity

Conagra argues "the Complaint unequivocally discloses that [Wienhoff] was *not* in privity with Conagra." (Doc. 13, p. 23). Wienhoff responds that the privity inquiry is fact-intensive and inappropriate at the motion to dismiss stage. Wienhoff also argues that she satisfies the "direct relationship" exception to strict privity because her allegations show that Conagra's marketing "was based on its awareness that this factor would, and did, appeal to parents seeking snacks beneficial for their children's development." (Doc. 18, p. 18).

It is appropriate to address the privity inquiry at the motion to dismiss stage. In the very case on which Wienhoff relies in support of the "direct relationship" exception—*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772 (N.D.

Ill. 2016)—the court was deciding a motion to dismiss. The court acknowledged that
"[w]hile discovery may yield additional supporting evidence upon which Plaintiffs can
rely, Plaintiffs are also required to plead a sufficient basis in the Complaint to state a claim
for privity." *Id.* at 807. Further, the privity inquiry was addressed at the motion to dismiss
stage in *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516 (7th Cir. 2003). *See id.* at 525
("because it is undisputed that [plaintiff] lacks privity of contract with [defendant], this
claim against [defendant] was properly dismissed").

Wienhoff has not pled a sufficient basis to state a claim for privity. Wienhoff relies
on two conclusory allegations: "Snack Pack pudding is consistently voted by parents as
one of the key ingredients to their children's lunch boxes, and a regular snack," (Doc. 1,
p. 9), and "[p]udding is a food intended for children, whose nutritional development is
enhanced." (*Id.* at p. 1). This is not the same amount of factual support as *In re Rust-Oleum
Restore Mktg.*, 155 F. Supp. 3d 772, where the court noted:

> Plaintiffs have done so here, where they allege factual support for the
> "direct dealing" exception. Namely, Plaintiffs allege a series of well-
> pleaded paragraphs detailing Rust-Oleum's direct marketing campaign to
> consumers, including to Plaintiffs and the putative class (*see, e.g.*, R.16,
> ¶¶ 59-70), and additionally allege that "consumers relied upon
> Defendant['s misrepresentations ... regarding Restore, including
> advertisements that Restore would last ten to twelve years" (*id.*, ¶ 93; *see
> also id.*, ¶¶ 329, 345, 350). In addition, Plaintiffs allege factual support of
> specific instances, for example with Plaintiff Hoff, alleging that "Hoff
> reviewed Defendant's advertising regarding Restore's high quality and
> longevity, and in reasonable reliance of those statements, incurred out of
> pocket costs for damages caused by Restore's premature failure and/or the
> concomitant costs of repair and/or replacement of his deck." (*Id.*, ¶ 337).

*Id.* at 807.

Because Wienhoff was not in privity with Conagra, Conagra's Motion to Dismiss is granted as to Wienhoff's warranty claims.

B. *Pre-suit Notice*

Even if Wienhoff sufficiently alleged privity, Wienhoff's claims premised on breaches of warranty fail for lack of pre-suit notice. Conagra correctly points out that "Illinois law requires that 'a buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'" (Doc. 13, p. 24) (citing 810 ILCS 5/2-607(3)(a)).

Wienhoff argues that notice is not required because Conagra knew about the pudding's composition and conceded the point on its motion to dismiss. (Doc. 18, p. 18). The problem is a "seller must know more than just the facts constituting the breach; the seller must know of the buyer's claims that those facts constitute a breach." *Elder*, 2022 WL 816631, at *4 (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590 (Ill. 1996) (noting that "even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2–607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer")). Thus, Conagra's knowledge of its own ingredients does not constitute actual knowledge of the defect.

Wienhoff also argues that the filing of the complaint satisfies the notice requirement. The Illinois Supreme Court has found, however, that "[o]nly a consumer plaintiff who suffers a personal injury may satisfy the section 2–607 notice requirement by filing a complaint stating a breach of warranty action against the seller." *Connick*, 675

N.E.2d at 590. Wienhoff claims only economic loss—so filing a complaint does not satisfy the notice requirement.

C. *Wienhoff's MMWA Claim*

First, Wienhoff's MMWA claim must be dismissed for lack of jurisdiction. Wienhoff has not named any plaintiffs besides herself. In *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020), the plaintiffs named three individuals, but argued that "by satisfying CAFA requirements, they are relieved of the MMWA's obligation to name at least one hundred plaintiffs." The Ninth Circuit disagreed, pointing out that "[t]he MMWA's federal-claim requirements of one hundred named plaintiffs for a class action and an amount in controversy of $25 individually and $50,000 in the aggregate stand in marked contrast to CAFA's jurisdictional requirements for *diversity actions*: an amount in controversy exceeding $5,000,000 exclusive of interest and costs, numerosity (at least one hundred plaintiffs who need not all be named), and minimal diversity." *Id.* (citing 28 U.S.C § 1332(d); Fed. R. Civ. P. 23; cf. 28 U.S.C. § 1332(a)). The Court then noted the following:

> Construing CAFA to provide jurisdiction over MMWA claims despite Plaintiffs' failure to satisfy the plain-language requirement of at least one hundred named plaintiffs would have the effect of overriding a part of the MMWA. But the legislature's intent to repeal a statute must be "clear and manifest." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007) (citation omitted). Although CAFA was enacted thirty years after MMWA, *see* Magnuson-Moss Warranty Act, Pub. L. No. 93-637, 88 Stat. 2183 (1975) and Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005), CAFA does not demonstrate any intent by Congress to repeal or alter parts of the MMWA's jurisdictional requirements.

*Id.* at 1035. "Therefore, CAFA may not be used to evade or override the MMWA's specific numerosity requirement, and we affirm the district court's dismissal of the MMWA claim." *Id.*[3]

Even if the Court has jurisdiction over the MMWA claim, "[t]he ability to sustain a cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim." *Schiesser v. Ford Motor Co.*, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016); *see also In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 241 F.R.D. 305, 315 (S.D. Ill. 2007) (noting that "[a]lthough [p]laintiffs bring this action pursuant not to state law but the Magnuson–Moss Act, state law nonetheless dominates this case due to the peculiar nature of the federal statute, which in numerous respects is essentially a vehicle for vindicating state-law warranty claims in federal court").[4] Because the state-law warranty claims fail, Wienhoff's MMWA claim fails.

Finally, even if the Court has jurisdiction and the state-law warranty claims survive, the MMWA claim must still be dismissed because the phrases "Made with Real Milk" and "Smoother" are descriptions of Conagra's pudding. These descriptions do not warrant that the pudding is "defect free or will meet a specified level of performance over

---

[3] The Seventh Circuit has not decided this issue. In fact, in *Ware*, 6 F.4th at 733, the Seventh Circuit recognized the "split in authority about the interaction between the class requirements under CAFA and the Magnuson-Moss Warranty Act." The Court acknowledged that "[t]he Ninth Circuit recently held that even if a putative Magnuson-Moss class action satisfies CAFA's criteria (i.e., minimal diversity of citizenship and the amount in controversy exceeds $5 million), it must still independently meet Magnuson-Moss's named-plaintiff requirement." *Id.* (citing *Floyd*, 966 F.3d at 1034–35). The Court then noted that "[w]e need not take sides on this issue here because it does not affect the outcome." *Id.*

[4] Notably, the "Magnuson–Moss Act does contain substantive provisions in addition to the remedies it furnishes for prosecuting state-law breach of warranty claims in federal court." *In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 241 F.R.D. at 315. But Wienhoff fails to allege any violation of the substantive provisions. Rather, Wienhoff alleges breaches of express and implied warranties which are controlled by state law.

a specified period of time." 15 U.S.C. § 2301(6)(A). *See e.g., Elder*, 2022 WL 816631, at *4 (dismissing the plaintiff's MMWA claim because "[t]he description 'All Butter Loaf Cake' makes no claim that the cake is free of defects or will meet a specified level of performance over a specified period of time"); *Rudy*, 2022 WL 345081, at *8 (dismissing the plaintiff's MMWA claim because "[t]he phrase 'Smoked Almonds' is a product description that does not warrant to consumers that the Product is defect-free or will perform at a specified level over a specific time").

## IV.    Count III – Negligent Misrepresentation Claim

Wienhoff's negligent misrepresentation claim is barred by the "*Moorman* doctrine." "The *Moorman* doctrine is intended to preserve the distinction between tort and contract." *Sienna Ct. Condo. Ass'n v. Champion Aluminum Corp.*, 129 N.E.3d 1112, 1119 (Ill. 2018). The Illinois Supreme Court has explained that the doctrine "denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." *Id.* (quoting *Collins v. Reynard*, 607 N.E.2d 1185, 1188 (Ill. 1992) (Miller, J., specially concurring, joined by Bilandic, Freeman, and Cunningham, JJ.). Because Wienhoff seeks relief for disappointed commercial expectations—her negligent misrepresentation claim is barred by the *Moorman* doctrine.

Wienhoff responds that her negligent misrepresentation claim is not barred because she meets one of the exceptions to the *Moorman* doctrine: "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435

N.E.2d 443, 452 (Ill. 1982).[5] The problem is this exception applies only when the entity is in the *business of supplying information*. In *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334–35 (Ill. 2006), the Illinois Supreme Court noted:

> Subsequently, *in Fireman's Fund Insurance Co. v. SEC Donohue, Inc.*, 176 Ill.2d 160, 168, 223 Ill.Dec. 424, 679 N.E.2d 1197 (1997), we addressed the negligent misrepresentation exception to the *Moorman* doctrine directly, explaining that the focus must be on whether the defendant is in the business of supplying *information* as opposed to providing something tangible.

Here, Conagra is not in the business of supplying information, but is in the business of providing something tangible—pudding. Accordingly, an exception to the *Moorman* doctrine does not apply, and Conagra's Motion to Dismiss is granted as to Wienhoff's negligent misrepresentation claim.

## V.     Count IV – Fraud Claim

In Illinois, a claim for fraud must include the following elements: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick*, 675 N.E.2d at 591).

Wienhoff's fraud claim fails from the start because she has not plausibly alleged that Conagra's pudding label contained a false statement. Indeed, her allegations are merely a fanciful interpretation of Conagra's pudding label. Even if the Court found that

---

[5] The "intentional misconduct" exception does not apply to negligent misrepresentation claims "because by definition fraud is intentional and negligence is not." *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 837 (N.D. Ill. 2021) (citing *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 722 (N.D. Ill. 2020)).

Wienhoff had a reasonable interpretation, her fraud claim further fails because her allegations are insufficient to support scienter. Wienhoff merely alleges that Conagra's "fraudulent intent is evinced by knowledge that it replaced milkfat with palm oil, evinced by the asterisk which is difficult for consumers like [Wienhoff] to notice." (Doc. 1, p. 13). The Court need not accept this conclusory allegation. Accordingly, Wienhoff's fraud claim must be dismissed.

## VI.    Count V—Unjust Enrichment Claim

"Under Illinois law, unjust enrichment is not a separate cause of action." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011). "Instead, Illinois courts describe it as 'a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence . . . ." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) (quoting *Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.*, 484 N.E.2d 349, 354 (Ill. App. Ct. 1985)). "The request for relief based on unjust enrichment is therefore 'tied to the fate of the [ICFA] claim[.]'" *Id.* (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019)).

Because Wienhoff failed to state a claim under the ICFA, she also failed to state a claim for unjust enrichment. *See e.g., id.* (holding that because "[the] [plaintiff] failed to state a claim under the ICFA, she also failed to state a claim for unjust enrichment").

### CONCLUSION

For these reasons, the Motion to Dismiss filed by Conagra Brands, Inc. (Doc. 13) is **GRANTED**. The Court dismisses Wienhoff's claims against Conagra without prejudice.

Wienhoff has until **September 22, 2022**, to file a First Amended Complaint consistent with Rule 11.

      **IT IS SO ORDERED.**

      **DATED:  September 8, 2022**

                                       **NANCY J. ROSENSTENGEL**
                                       **Chief U.S. District Judge**